THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. ORBY O. HEATHCOAT, ALIAS RAMON A. COTA, PLAINTIFF IN ERROR.

Argued May 18, 1937—Decided September 22, 1937.

For the plaintiff in error, *Andrew M. Cella, John J. Boscarell* and *Anthony Salamandra.*

For the defendant in error, *Andrew J. Duch* (*Leo J. Rogers,* of counsel).

The opinion of the court was delivered by

LLOYD, J. The plaintiff in error was convicted of murder in the first degree without recommendation of life imprisonment and sentenced to death. He has a writ of error and argues in his brief specifications of causes for reversal under the one hundred and thirty-sixth section of the Procedure act. Few of these specifications bring anything adequately before the court, but in view of the importance of the case we have examined the substantial contentions with the following result:

The first point argued is that the judge erred in not impaneling fourteen jurors as authorized by chapter 287 of the laws of 1935. The validity of this legislation was passed upon affirmatively by this court in the case of *State* v. *Dolbow,* 117 *N. J. L.* 560. By its very terms the occasion for invoking the provisions of the act is placed in the discretion of the trial judge. That the judge failed to invoke the permissive authority conferred by the act but adopted the time honored jury of twelve without the calling of additional jurors suggests to us no taint of illegality.

Other specifications are that the evidence was insufficient to sustain a verdict of murder in the first degree; that there was error in the denial of a motion to the same effect; and that the verdict was against the weight of the evidence. These grounds we think are not well founded. The plaintiff in error and the deceased had been living together as husband and wife and the latter disappeared on June 12th, 1936. As a result of reports coming to the police authorities an investigation was made and on August 4th Heathcoat was taken into custody and questioned. After two days he was released. On September 14th he was again taken into custody, and after questioning admitted having killed his wife

and showed the police where he had buried her body under a shed attached to their home. His story as told in the statement and subsequently on the witness stand was to the effect that he threw a hammer at a man called Marty who was threatening to assault him and endanger his life, and that instead of the hammer striking the man it struck and killed the woman.

The state proceeded to discredit this statement and to establish the criminality of the act by showing that the hammer was used close to the woman's head; that he had made threats of intention to get rid of her as soon as he could get what money she had; proof of his infatuation for a woman named Miller who through his sexual relations had become pregnant. It also appeared that he was forging her name to pension checks and collecting the proceeds after the killing; that a week after her death he disposed of all of her furniture and other belongings and established the Miller woman and her father in his home, representing the former as his wife. There was thus presented the motive of getting rid of one woman that he might with freedom carry on his connubial and sexual relations with another; the expressed purpose to kill after his wife's money was gone; the immediate appropriation of these assets and their hurried disposal. These together with the discrediting of his own story and the secret hiding of the body, we think, amply demonstrated a killing designed and premeditated, and a killing that was willfully and deliberately executed. There was no error therefor in refusing the motions for a direction and the verdict in our view was not against the weight of the evidence.

The next complaint is of the admission of photographs of the deceased and of the surroundings, including the rooms involved in the tragedy. While taken approximately three months after the crime was committed, the conditions were those created by the defendant himself and there is nothing to suggest a change in the body or the premises except the ravages of time on either. The admissibility of photographs under such circumstances is too well fortified to admit of doubt. *State* v. *Fine,* 110 *N. J. L.* 67.

The specification next sought to be availed of as to the admission of the evidence of one Seckinger concerning the relations between Heathcoat and Mary Miller presents no legal ruling by the court; nor do we find that the evidence therein complained of was incompetent.

It is next said that the confession or statement made by the accused was improperly admitted because not shown to be voluntary. The judge to whom was committed the question of determining the fact found to the contrary, and there was abundant evidence to support it. Nor do we see occasion to segregate the statements of the accused pertaining to his relations with the Miller woman on the ground that he subsequently asked to have that portion kept "off the record." They were part of his general statement and were admissible with the rest, and he could not control their admissibility by expression of a desire to recant them.

The next specification refers to the testimony of one Haussling, a police officer who related a conversation between the accused and a Mrs. Pettit, for whom the defendant had sent. She was asked if she knew anything of the whereabouts of the deceased, to which she replied that "Cota [Heathcoat] ought to know where she was;" that about June 16th she had talked to Mrs. Reidel [the deceased] who had told her that she had been told by the sister of Mary Miller that Mr. Cota was going to marry Mary Miller but that she, Mrs. Reidel, was going to stay in the house "irregardless" as it was her home. We think there is nothing in this that takes it out of the general rule that statements made in the presence of an accused where opportunity for reply is afforded are admissible.

The next complaint is of the remark of the prosecutor in asking when it became a crime in Mercer county for an officer to make a bet of a bottle of whiskey on the Hauptmann electrocution. The prosecutor withdrew the comment but the court remarked that he saw nothing improper. Whether proper or improper it was trivial in its nature and could have no substantial bearing on the result.

The further remark of the prosecutor that if they had the

testimony of a little girl they would have the true relationship existing between these people, was brought forth by the criticisms of counsel for the defendant and we see nothing harmful therein.

The comment of the judge expressing his opinion that the story of the defendant was in his opinion most improbable, coupled with the caution that his opinion did not bind the jury, that they were entitled to disregard it, was not in violation of his legal right. *State* v. *Overton,* 85 *N. J. L.* 287; *State* v. *Hauptmann,* 115 *Id.* 412.

The judgment of conviction is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, COLE, JJ. 15.

*For reversal*—None.